IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMADOR L. CORONA, Attorney at Law, individually and on behalf of all other similarly situated persons,<br><br>               Plaintiff,<br><br>     v.<br><br>FIRST NATIONAL BANK OF OMAHA, a Nebraska corporation, and UNITED BANK CARD, INC., a corporation doing business as Harbortouch;<br><br>               Defendants. | **8:12CV89**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on cross-motions for summary judgment filed by the plaintiff, Amador Corona, Filing No. 101; defendant First National Bank of Omaha ("First National" or "the Bank"), Filing No. 105; and defendant United Bank Card ("UBC") Filing No. 107.[1] This is a purported class action[2] for damages and declaratory relief for breach of contract and unjust enrichment in connection with the assessment and collection of an Internal Revenue Service ("IRS") Processing Validation Charge from credit card merchants.[3] The dispute involves whether the fees charged to merchants

---

[1] Also pending are motions in limine filed by defendants United Bank Card and First National Bank of Omaha, Filing No. 94 and Filing No. 97. The defendants seek exclusion of a seven-page Internet posting of IRS "frequently asked questions (FAQs)." See Filing No. 21, Index of Evid., Ex. 1. They argue that the document is not authenticated, is not self-authenticating, and constitutes inadmissible hearsay. Because the court does not rely on that evidence in connection with the present motion, the court need not resolve the issue and the motion will be denied without prejudice to reassertion.

[2] The parties have stipulated that Corona's individual claims will be litigated before any class-related claims. See Filing No. 50, Rule 26(f) Report.

[3] Under 26 U.S.C. § 6050W, payment settlement entities must report payments made to merchants for goods and services in settlement of payment card and third-party payment network transactions. See Information Reporting for Payments Made in Settlement of Payment Card and Third Party Network Transactions, 75 Fed. Reg. 49821-01, 2010 WL 3207571 (Aug 16, 2010) (to be codified at 26 C.F.R. pts. 1, 31, and 301).

were properly noticed, charged, and collected by defendant UBC under the contract at issue.

The plaintiff argues that undisputed evidence establishes that he is entitled to summary judgment in his favor against defendant UBC. He asserts that the evidence shows that UBC breached its contract with the plaintiff by assessing and collecting fees from him, and by assessing and collecting the fees without the express consent and approval of First National.

In its motion for summary judgment, defendant First National argues that the undisputed evidence establishes that First National did not have any involvement in the conduct on which the plaintiff's claims are based. The plaintiff concedes the motion as to his individual claims against First National and those claims will be dismissed. *See* Filing No. 118, Plaintiff's Brief at 1.

UBC contends in its motion for summary judgment that there is no legal basis for the plaintiff's claims, arguing that the contract expressly provides that UBC could amend or modify the terms of the contract with 30 days' notice. It further argues that it is entitled to summary judgment on the plaintiff's unjust enrichment claim because the plaintiff's remedy, if any, lies in contract.

### I. FACTS

The parties have submitted documents and deposition testimony in support of their respective positions. *See* Filing No. 104, Index of Evid., Exs. 1-26; Filing No. 109, Index of Evid., Exs. 1-26; Filing No. 110, Index of Evid., Exs. 1A-1E; Filing No. 111, Index of Evid., Exs. 1F-1T; Filing No. 116, Index of Evid., Exs. A-C. The court's review of the evidence reveals the following undisputed issues of material fact.

Corona is an attorney practicing in the State of California.  Filing No. 109, Index of Evid., Ex. 1, Deposition of Amador Corona ("Corona Dep.") at 8.  Defendant UBC is a credit card payment and transaction processor with its principal place of business in Allentown, Pennsylvania.  *Id.* at 3.  It now does business as Harbortouch.  *Id.*  Essentially, independent sales organizations such as UBC/Harbortouch recruit merchants to contract with banks for credit card processing through Visa and/or Mastercard.  Filing No. 104-18, Index of Evid., Ex. 18, Deposition of Paula Radik ("Radik Dep.") at 28.  First National is UBC's "sponsoring" bank.  Filing No. 104-20, Index of Evid., Ex. 20, Deposition of Michael G. Ward ("Ward Dep.") at 32-33.  UBC is the independent sales organization that facilitated credit card transactions with respect to the plaintiff's accounts at First National.  *Id.* at 30.

First National, UBC, and the plaintiff entered into a "Merchant Transaction Processing Agreement" ("the Merchant Agreement").  Filing No. 8, Notice, Ex. C, Merchant Agreement; *see also* Filing No. 104-2, Index of Evid., Ex. 2, Merchant Agreement.  First National generally agreed to process debit and credit card sales and the plaintiff, as Merchant, generally agreed to submit its sales from credit cards exclusively to First National for processing.  *See id.*  Corona agreed to pay First National "the fees as set forth in the Merchant Application and the Rate Descriptions and all other sums owed to First National ("FEES") for SALES and SERVICES as set forth in this AGREEMENT as amended from time to time."  *Id.,* Agreement at 3.  Corona submitted two account applications that expressly incorporate the terms and conditions of the Merchant Agreement.  Filing No. 104-20, Index of Evid., Ex. 20, Ward Dep. at 19.  First National and UBC also entered into a "Third Party Organization Marketing and

3

Registration Agreement" (the "Third Party Agreement").  See Filing No. 104-4, Index of Evid., Ex. 4, Third Party Agreement; Ex. 18, Radik Dep. at 18-19.

In March 2011, UBC notified the plaintiff in an attachment to his monthly First National account statement that a fee of $27.95 would be assessed in each of three installments on May 1, 2011 (the initial fee charge); on September 1, 2011; and on January 1, 2012.  Filing No. 104-5, Index of Evid., Ex. 5, Notices at 5, 10; Ex. 6, billing statements.  The notice explained that the IRS Fee was being charged to offset costs incurred with compliance with 26 U.S.C. § 6050W.  Id., Ex. 5, notice at 5.  The plaintiff acknowledges that he received the notice.  Filing No. 117, Brief at 4; Filing No. 109, Ex. 1, Deposition of Amador Corona ("Corona Dep.") at 83, 143.  On or about May 1, 2011, UBC assessed fees in the amount of $55.90 on the plaintiff—$27.50 for each of two accounts—and that amount was deducted from his accounts at First National.  Filing No. 109-1, Index of Evid., Ex. 1, Corona Dep. at 96-97, 113-114.

The actual reporting to the IRS, in 1099K reports, was done by TSYS Company Solutions, LLC ("TMS"), a former division of First National that was later sold, on First National's behalf under amendments to a third party organization marketing and registration agreement between those parties.  Filing No. 104-18, Ex. 18, Radik Dep. at 39-40.  UBC's Chief Executive Officer ("CEO"), Jared Isaacman, testified by deposition that he was unable to quantify the costs UBC incurred in connection with § 6050W reporting, but he stated that its costs were $24.00 per year per account in an email in which he agreed to share the fee revenue with a major sales customer.  Id., Ex. 19, Deposition of Jared Isaacman ("Isaacman Dep.") at 66.  He also testified that the $24.00 figure was not accurate, but was based on "appeasing a sales office and not a hard-

core analysis of our profit and loss related to this fee." *Id.* at 66-67. In answers to interrogatories, UBC estimated its costs of complying with §6050W were $6.50 to $7.00 per month per merchant. *Id.*, Ex. 9, Answers to Interrogatories at 3, 11; *see also id.,* Ex. 23, Isaacman Dep. at 38-40; Ex. 22, Ward Dep. at 110.

Isaacman testified by deposition that UBC's costs were composed of the amount it was charged by First National, manpower allocation, and an unspecified amount in "loss of customers." *Id.* at 26-30, 55. The evidence indicates that First National charged UBC seventy-five cents per account in connection with § 6050W reporting. *Id.* at 26, 100. Isaacman testified that he decided to pass the costs of compliance on to his merchants and he determined the amount of the fee. *Id.* at 43-44. He also testified he confirmed the reasonableness of the fee by consulting with two competitors. *Id.* at 35-36. He stated he has no spreadsheets or other documentation that would show the processes that underlie the decision to charge the fee or the determination of the amount of the fee. *Id.* at 86-88. The fee is no longer assessed; rather, an $89.00 annual fee that encompasses several fees that had previously been separately assessed, is charged to the merchants. *Id.* at 80-82.

## II.  LAW

Under Nebraska law, the meaning of a contract and whether a contract is ambiguous are questions of law. *Kluver v. Deaver*, 714 N.W.2d 1, 5 (Neb. 2006). A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Lexington Ins. Co. v. Entrex Commc'n Servs.*, 749 N.W.2d 124, 132 (Neb. 2008). A contract is ambiguous when a

word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id.*

A contract must receive a reasonable construction, and a court must construe it as a whole and, if possible, give effect to every part of the contract. *Id.* A determination as to whether ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Ruble v. Reich*, 611 N.W.2d 844, 850 (Neb. 2000). If a contract is ambiguous, the meaning of the contract is a question of fact, and a court may consider extrinsic evidence to determine the meaning of the contract. *Id.*; *Eagle Run Square II v. Lamar's Donuts Int'l*, 740 N.W.2d 43, 48-49 (Neb. Ct. App. 2007).

Sufficient and valid consideration is essential to an enforceable express contract. *Hecker v. Ravenna Bank*, 468 N.W.2d 88, 93 (Neb. 1991). A modification of an existing contract that substantially changes the liability of the parties requires mutual assent, express or implied. *City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725, 747 (Neb. 2011) (involving a rate increase effected by a unilateral modification of the contract, to which the other party to the contract assented under economic duress and for which no new consideration existed). A weaker party's assent to a unilateral contract modification, which is to that party's disadvantage, should obviously not be implied from its conduct when the weaker party has shown that its assent was obtained through economic duress. *Id.* (stating that without any new consideration or negotiations for the modification, a court should not analyze whether the defendant's

profit from the duress was reasonable). "When a party to a contract shows that because of duress, it agreed under protest to the other party's demands for overperformance of its obligation, it may seek restitution for 'the value of the benefit conferred in excess of the recipient's contractual entitlement.'" *Id.* at 747-48 (quoting Restatement (Third) of Restitution and Unjust Enrichment, § 1 comment a; § 35(1) at 571 (2011)).

Generally, there is an implied covenant of good faith and fair dealing in every contract, whereby neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Spanish Oaks, Inc. v. Hy-Vee, Inc.*, 655 N.W.2d 390, 400 (Neb. 2003). The scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract. *Id.* (stating that "the nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties"). Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party. *Id*. However, a violation of the covenant of good faith and fair dealing occurs only when a party violates, nullifies, or significantly impairs any benefit of the contract. *Spanish Oaks, Inc.*, 655 N.W.2d at 400. The question of a party's good faith in the performance of a contract is a question of fact. *RSUI Indem. Co. v. Bacon,* 810 N.W.2d 666, 674 (Neb. 2011).

Unjust enrichment, part of the law of restitution, is used to create an implied or quasi-contractual relationship in the absence of an express contract between parties and has been defined as the unjust retention of a benefit to the loss of another, or the

retention of money or property of another against the fundamental principles of justice or equity and good conscience. *Kisicki v. Mid-America Fin. Inv. Corp.*, 2002 WL 31654490, *6 (Neb. Ct. App. 2002). Unjust enrichment describes a recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels the performance of a legal and moral duty to pay. *Id.* The doctrine of unjust enrichment is recognized only in the absence of an agreement between the parties. See *Washa v. Miller*, 546 N.W.2d 813, 818-19 (Neb. 1996). "The doctrine does not operate to rescue a party from the consequences of a bad bargain." *Id*. at 819. The enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract. *Id.* An express and an implied contract for the same thing cannot exist at the same time. *Wrede v. Exchange Bank of Gibbon*, 531 N.W.2d 523, 530 (Neb. 1995).

A cause of action consists of the fact or facts which give one a right to judicial relief against another; a theory of recovery is not itself a cause of action. *InterCall, Inc. v. Egenera, Inc.*, 824 N.W.2d 12, 21-22 (Neb. 2012). Thus, two or more claims in a complaint arising out of the same operative facts and involving the same parties constitute separate legal theories, of either liability or damages, and not separate causes of action. *Id.* In Nebraska, pleading alternative theories of recovery is permitted, and ordinarily, an election between theories of recovery will not be required unless the theories are so inconsistent that a party cannot logically choose one without renouncing the other. See *Kenyon & Larsen v. Deyle*, 286 N.W.2d 759, 762 (Neb. 1980); *Thurston v. Nelson*, 842 N.W.2d 631, 643 (Neb. Ct. App. 2014)

8

## III. DISCUSSION

On review of the parties' submissions, the court finds there are genuine issues of material fact that preclude summary judgment. First, the plaintiff has not shown that he is entitled to judgment as a matter of law. Although he has presented evidence that UBC assessed the fees without the consent and approval of First National, thus arguably breaching a term of the contract, he has not shown that compliance with that provision is material to the agreement, at least as it relates to the plaintiff. He has not shown as a matter of law that UBC's assessment of the fee was either a violation of the law or a material breach of the contract. Accordingly, the court finds that the plaintiff's motion for summary judgment should be denied.

The court further finds that UBC has similarly failed to show that it is entitled to judgment as a matter of law. The court finds the contract is ambiguous with respect to the nature and amount of permissible fees that could be collected from merchants. No specific fee for regulatory compliance is set forth in the contract, although the contract does expressly list other fees. On the other hand, the contract does not prohibit the assessment of such fees and provides that the contract can be modified with appropriate notice. The court finds there are genuine issues of material fact with respect to adequacy of the notice, as well as whether such a fee would have been within the contemplation of the parties at the time they entered into the contract.

There are also factual issues with respect to whether the assessment of the fee amounted to a breach of UBC's duty of good faith and fair dealing. There is evidence from which a jury could infer a violation of that duty—the fee appears to be out of proportion to the costs incurred by UBC and appears to be based on nothing but a

calculation of how much its merchants would pay. From the testimony, depending on credibility assessments, a jury could conclude that UBC imposed an unfair contract term on merchants that was unsupported by additional consideration and essentially amounted, at the least, to "gouging," and, at the most, to misrepresentation. Accordingly, there are genuine issues of material fact with respect to the unjust enrichment claim. Resolution of these issues will involve the weighing of evidence and assessments of credibility.

THEREFORE, IT IS ORDERED:

1. Plaintiff Amador Corona's motion for summary judgment ([Filing No. 101](#)) is denied.

2. Defendant First National's motion for summary judgment ([Filing No. 105](#)) is granted.

3. The plaintiff's individual claims against defendant First National are dismissed with prejudice, each party to pay its own costs.

4. Defendant UBC's motion for summary judgment ([Filing No. 107](#)) is denied.

5. Defendant First National's motion in limine ([Filing No. 97](#)) is denied as moot.

6. Defendant UBC's motion in limine ([Filing No. 94](#)) is denied without prejudice to reassertion.

Dated this 6th day of June, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge