IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMADOR L. CORONA, ATTORNEY AT LAW, individually and on behalf of all other similarly situated persons, | ) ) ) ) | Case No. No. 8:12-cv-00089 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED BANK CARD, INC. and FIRST NATIONAL BANK OF OMAHA, a nationally chartered bank, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTAND
FOR CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**

Plaintiff, AMADOR L. CORONA, ATTORNEY AT LAW, individually and on behalf of all other similarly situated persons ("**Plaintiff**" or **"Corona"**), pursuant to Fed. R. Civ. P. 23 and applicable law, hereby submits this Memorandum Brief in support of his request to preliminarily approve the proposed class action settlement, to conditionally certify the proposed settlement class for settlement purposes only, and to approve the class notice and claim form.

## I.    INTRODUCTION

After over three years of aggressive litigation, the parties have reached an agreement to settle Plaintiff's claims pursuant to the terms set forth in the National Class Action Settlement Agreement and Release ("**Settlement**").[1]   The Settlement is the result of well-informed and extensive arm's-length negotiations between and among highly experienced counsel over the period of several months and subsequent to a mediation that resulted in an impasse.   For the

---

[1] *See* Evidence Index Exhibit # 1.

reasons outlined herein, Plaintiff respectfully submits that the Proposed Settlement is fundamentally fair, reasonable, adequate and in the best interest of the Settlement Class, and therefore asks the Court to enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("**Order**")[2], submitted herewith: (a) granting preliminary approval of the proposed settlement; (b) approving the parties' proposed form and method for giving notice of the Settlement of this action to the proposed class; (c) directing that the notice be given to proposed class members; (d) scheduling a final settlement hearing at which the Court will consider final approval of: (i) the Settlement and entry of the Final Judgment and Order of Dismissal with Prejudice[3]; and (ii) the class representative's motion for a service award and class counsel's motion for an award of attorneys' fees and expenses; and (e) certifying the proposed class for purposes of settlement only. For the reasons set forth below, the Court should enter the Order, preliminarily approving the proposed settlement and conditionally certifying the class.

## II.    SUMMARY OF THE LITIGATION

On February 2, 2012, Plaintiff – a merchant that uses credit card processing services – filed a proposed class action complaint in Nebraska state court. The complaint alleged that the then Defendants, First National Bank of Omaha, Inc. ("**FNBO**") and TranscendentOne, Inc. ("**T-One**"), breached their contracts with or were unjustly enriched by their merchants in connection with charging fees for their alleged cost of compliance with certain Internal Revenue Service regulations ("the **IRS fees**"). The IRS fees, usually $27.95 in amount, were charged a total of four (4) times between April 1, 2011 and June 30, 2012, when the IRS fees were discontinued. FNBO and T-One removed the complaint to this Court, (Doc. # 1), and filed motions to dismiss (Doc. # 9 and #12).

---

[2] *See* Evidence Index Exhibit # 3.
[3] *See* Evidence Index Exhibit # 5.

On October 4, 2012, the Court denied FNBO and T-One's motions to dismiss. (Doc. # 40). Soon thereafter, the parties agreed to bifurcate the issues of merits and class certification. United Bank Card, Inc. also agreed to substitute in place of T-One,[4] prompting Plaintiff to file a First Amended Complaint. (Doc. # 61 and # 63). United Bank Card, Inc. is now known as Harbortouch Payments, LLC ("**Harbortouch**").

Harbortouch is in the credit card processing business. Merchants use Harbortouch's services to process credit card transactions. Although merchants received notice of imposition of the IRS fees from entities such as T-One, Harbortouch is the entity that actually collected the IRS fees at issue in the class action complaint.

Both written and oral discovery on the merits ensued during the course of 2013. Extensive written discovery and depositions were undertaken. In November 2013, the parties submitted competing summary judgment motions. (Doc. # 101, # 105, and #107). On June 6, 2014, the Court entered an Order denying Plaintiff's and Harbortouch's summary judgment motions. (Doc. # 130). The Plaintiff did not oppose the entry of summary judgment in favor of FNBO (Doc. # 135), leaving Harbortouch as the sole, remaining defendant in this dispute.

Not long after the Court's ruling on summary judgment, the parties agreed to mediate the case. The mediation was held on September 10, 2014. The mediation resulted in an impasse, in part, due to the fact that Harbortouch had recently settled claims that involved the IRS fees in a separate class action lawsuit filed in New Jersey state court styled *Roma Pizzeria v. Harbortouch* ("the **Roma Pizzeria class action**"). Thereafter, extensive motion practice ensued in connection with Harbortouch's desire to raise affirmative defenses related to the settlement of the *Roma Pizzeria* class action. (Doc. # 150, 159, 164, and 168). The parties also initiated written discovery relating to class certification issues.

---

[4] The claims against T-One were dismissed without prejudice, pursuant to stipulation of counsel. (Doc. # 65).

On February 25, 2015, the Court overruled Plaintiff's objection to the Magistrate Judge's Order (Doc. # 169) on Harbortouch's motion to raise affirmative defenses related to the settlement of the *Roma Pizzeria* class action. (Doc. # 181) The parties also continued to participate in written discovery on class certification issues. In early March 2015, the parties initiated a dialogue that resulted in extensive, back-and-forth communications and negotiations between counsel for the parties aimed at settling claims raised in the First Amended Complaint on a class-wide basis. Once tentative agreement was reached on the merits, the parties then negotiated Corona's claims for attorney fees and costs. The hard-fought negotiations spanned a period of nearly three (3) months, resulting in a settlement-in-principle on June 4, 2015. The parties formalized the settlement during the months of June and July 2015. The terms of the proposed settlement are summarized in this motion and set forth in detail in the Settlement.

## III. SUMMARY OF THE PROPOSED SETTLEMENT[5]

The proposed terms of the settlement are as follows.

### A. Definition of the Settlement Class

The settlement class consists of all Persons within the United States that are or were Harbortouch Merchants that submitted a Merchant Application to Harbortouch prior to February 1, 2009, and that paid Harbortouch the IRS fees (and did not receive a full refund). Excluded from the Settlement Class are:

(a) Persons that received a full refund of IRS fees paid;

---

[5] If the Settlement is not finally approved, is not upheld on appeal, or is otherwise terminated for any reason, then any preliminary approval order entered in this Action shall be deemed null and void, including but not limited to the conditional certification of the class for settlement purposes only; the Agreement and all negotiations, proceedings, and documents prepared, and statements made in connection therewith, shall be without prejudice to any party and shall not be deemed or construed to be an admission or confession by any party of any fact, matter, or proposition of law. Harbortouch reserves its right to oppose certification of the class should the settlement be terminated.

(b) Persons that believed, before signing the Merchant Application, that First National Bank of Omaha or Harbortouch had a right under the contract to unilaterally amend or modify contractual terms that would permit the assessment of the IRS fees, after providing 30 days' written notice;

(c) Harbortouch and its employees, officers, directors, and all persons with a controlling interest, and Harbortouch's legal representatives, predecessors, successors and assigns; and

(d) Persons that submitted a valid and timely request for exclusion from the Settlement Class.

The claims of Harbortouch Merchants whose accounts were established after February 1, 2009 and paid the IRS fees to Harbortouch were compromised in the *Roma Pizzeria* class action.[6]

## B.    Settlement Consideration

All told, as a result of the settlement of the *Roma Pizzeria* class action, the total value of the Plaintiffs' claims was reduced to approximately $1.358 million.  Harbortouch received a net total of approximately $1.358 million in IRS fees paid by merchants whose accounts were established prior to February 1, 2009.  The net total factors in the share that Harbortouch was required to pay to other another entity, TSYS Merchant Solutions, LLC ("**TSYS**"), in order to comply with the IRS regulations that precipitated the assessment of the IRS fees.

The Settlement in this case establishes a total settlement benefit amount valued at $688,000.    $688,000 is roughly half of the net total of the IRS fees collected by Harbortouch from the class members.  The proposed settlement entitles Harbortouch's existing merchants who submit timely and valid claims to receive an equipment credit from Harbortouch.  The

---

[6] *See* Evidence Index Exhibit # 6.

equipment is used by merchants to use Harbortouch's credit card transaction services. The proposed settlement also entitles Harbortouch's former merchants who submit timely and valid claims to receive the same equipment credit as existing merchants or, alternatively, a cash payment equal to 50% of the equipment credit for which they are eligible. The equipment credit or cash payment available to each class member is derived from the total amount of IRS fees paid by that merchant. The total settlement benefit amount, and the amount available to each class member, was extensively negotiated by Corona and Harbortouch. The Settlement sets forth in detail the method of calculating the benefits available to each class member.

Both parties believe that their respective claims and defenses asserted in the litigation are strong. Nevertheless, Plaintiff recognizes and acknowledges potential problems of proof of, and possible defenses to, the claims asserted in the litigation, especially with respect to (a) proof that Harbortouch breached the terms of its contracts with its merchants and that Harbortouch's breach of the terms at issue were material to Plaintiff, (b) a potential defense based on a contractual limitation period in the contracts, and (c) proof of elements necessary to obtain class-wide certification of the claims. Plaintiff also has taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this litigation, as well as the difficulties and delays inherent in such litigation, including the expense and length of continued proceedings necessary to prosecute the litigation against Harbortouch through trial and through appeals. Thus, Plaintiff believes that the total settlement benefit amount available to the class members – $688,000 in value and which sum constitutes roughly half of the class members' total recoverable damages – is an excellent recovery and is in the best interests of Plaintiff and the proposed class.

As set forth in the Agreement, Harbortouch has denied, and continues to deny, all alleged wrongdoing or liability against it arising out of any of the claims alleged in the class action complaint. Nonetheless, Harbortouch has concluded that further litigation would be uncertain, protracted and expensive, and that it is desirable that the litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Settlement. Like Plaintiff, Harbortouch has also taken into account risks inherent in any litigation, especially in complex cases like this litigation.

**C.      Class Representative's Service Award and Plaintiff's Attorneys' Fees and Expenses**

Under the Settlement, Plaintiff will request a service award of $5,000 and class counsel will request attorneys' fees and expenses of $215,000, subject to Court approval. Importantly, Harbortouch has agreed that the service award sought by the class representative and the attorneys' fees and costs sought by class counsel will be paid separately by Harbortouch. Thus, the payment of the service award, and attorney fees and costs, will not reduce the value of the total benefits available to the class members. Along similar lines, Harbortouch has agreed to pay the costs of class action administration. Again, the costs of class administration will not reduce the value of the total benefits available to the class members.

**D.      Release**

The terms of the release are set forth in the Agreement. It includes, among other things, a release by members of the settlement class of all claims against Harbortouch that were asserted or could have been asserted in this or any action based on the allegation that Harbortouch breached its contracts with or was unjustly enriched by its merchants in connection with assessing and collecting the IRS fee, that the IRS fee was unconscionable or violated public

policy and/or that the IRS fee violates an Internal Revenue Service rule, regulation, code, Frequently Asked Question or publication.

## IV.    ARGUMENT

### A.    Standards for Preliminary Approval

Settlement is a strongly favored method for resolving litigation. *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No.1*, 921 F.2d 1371, 1383 (8th Cir. 1990).   In class action lawsuits, the policy of favoring voluntary resolution of litigation through settlement is particularly strong, as there is an overriding public interest in favor of settlement.   Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Armstrong v. Ed. of Sch. Dirs.*, 616 F.2d 305,313 (7th Cir. 1980) (internal citations omitted); *see also White v. NFL,* 822 F. Supp. 1389, 1416 (D. Minn. 1993). Indeed, such agreements should be deemed presumptively valid. *See Petrovic v. Amoco Oil Co.*, 200 F 3d 1140, 1148 (8th Cir. 1999) ('" [a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"') (citation omitted).

Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of claims brought on a class basis. Approval of a class action settlement under Rule 23(e) involves a two-step process: first, a "preliminary approval" order; and second, after notice of the proposed settlement has been provided to the class and a final hearing has been held to consider the fairness, reasonableness and adequacy of the proposed settlement, a "final approval" order and judgment. *See Manual for Complex Litigation* § 13.14 (4th ed. 2004). At the final approval hearing, the Court will have before it papers submitted in support of final approval of the Settlement and only then will it be asked to make a final determination as to whether the

Settlement is fundamentally fair, reasonable and adequate and in the best interests of the Settlement Class, under all the circumstances. For now, however, Corona is requesting that this Court take the first step in the approval process and grant preliminary approval of the proposed Settlement.

**B.    The Court Should Grant Preliminary Approval**

In determining whether preliminary approval is warranted, the Court should consider the extent of informed, arm's-length negotiations between the parties and whether the resulting Settlement is within the range of what might be found fair, reasonable and adequate. *See, e.g., Holden v. Burlington N, Inc.*, 665 F. Supp. 1398, 1402 (D. Minn. 1987); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Here, the proposed Settlement was achieved only after difficult, informed, arm's-length, and lengthy negotiations, thereby warranting notice apprising the Class of the Settlement and establishing a hearing date for final approval.

**1.    The Proposed Settlement Is the Product of Informed, Arm's-Length Negotiations Among Experienced Counsel After Extensive Motion Practice and Discovery**

"'A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Blackman v. Dist. of Columbia*, 454 F. Supp. 2d 1, 8 (D.D.C. 2006) (citations omitted); *see, e.g., Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects*, Inc., No. 8:02CV553, 2007 U.S. Dist. LEXIS 15547, at *6-*7 (D. Neb. Mar. 2, 2007); *In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056, 1064 (D. S.D. 2004). The Proposed Settlement is the product of extensive litigation and arm's-length negotiations conducted by experienced counsel. Accordingly, the fundamental fairness, adequacy and reasonableness of the Proposed Settlement may be presumed.

Over three years of extensive motion practice and aggressive litigation preceded the settlement, which included the comprehensive investigation, research and preparation of the claims by class counsel. Moreover, the litigation activity has been substantial, including the drafting of the complaints, extensive motion practice, including motions to dismiss, motions for summary judgment, and other motions directed to the pleadings. The parties also engaged in extensive written and oral discovery on both merits and class certification issues. The court docket speaks for itself. (Doc. # 1 to # 187).

In September 2014, the parties attempted to mediate a settlement. The parties submitted comprehensive mediation statements. All counsel of record and representatives for all parties attended the mediation. During the mediation, the parties set forth detailed and thoughtful presentations on the perceived strengths and weakness of their respective cases. Although the mediation resulted in an impasse and discovery on class certification and additional motion practice followed, the parties eventually engaged in further settlement discussions in early March 2015. Over the course of the next three months, the parties negotiated and labored through the process of negotiating the terms of the settlement based on their perceived views of the facts and applicable law, as well as ultimately drafting the Settlement and the supporting documentation. Damage analyses were also prepared and reviewed by each side. There is no doubt that the proposed Settlement in this case was the product of extensive negotiations. *See, e.g., In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 U.S. Dist. LEXIS 21226, at * 18 (D. Minn. June 2, 1993) ("intensive and contentious negotiations likely result in meritorious settlements, rather than collusive ones").

Based on their familiarity with the factual and legal issues, counsel for the parties were able to negotiate the proposed Settlement, taking into account the costs and risks of continued

litigation. The negotiations were at all times adversarial and at arm's-length, and produced a result that the parties believe to be in their respective best interests. *See, e.g., In re Charter Commc'ns, Inc. Sec. Litig.*, No. MDL 1506, 2005 U.S. Dist. LEXIS 14772, at *8 (E.D. Mo. June 30, 2005); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194 (S.D.N.Y. 2005). Moreover, "the Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Employee Benefit Plans*, 1993 U.S. Dist. LEXIS 21226, at *17; *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). Counsel for both sides have extensive experience in class action litigation and are thoroughly familiar with the factual and legal issues involved. This case has also been fiercely litigated by experienced and competent counsel on all sides. Because the proposed Settlement is the product of serious, informed and non-collusive negotiations among experienced counsel, it is deserving of preliminary approval. *See DeBoer*, 64 F.3d at 1178.

**2.     The Proposed Settlement Falls Within a Range of What Is Fair, Reasonable and Adequate**

The foundation of any settlement is the uncertainty of the outcome of the lawsuit. Clearly, a settlement will not recover all possible damages. Here, the proposed Settlement reflects the complexity and significant risks of class action litigation, including, among others, the potential success of Harbortouch's defenses on various legal and factual issues. Plaintiff agreed to the Settlement in the face of the risk that Plaintiff and the proposed class would recover nothing at all—especially here where the meaning, import and application of the contract terms at issue are subject to spirited debate among reasonable persons.

Indeed, Plaintiff submits that the settlement amount is a very good recovery and well within the range of possible approval. The total settlement benefit amount available to the class members consists of roughly half the value of the class members' total recoverable damages. It

is also serves as an immediate recovery and avoids the numerous obstacles and risks to be overcome to achieve such a recovery through litigation and at trial, and its attendant delays. In addition, the plan for distributing the benefits was devised in a manner to compensate former and current merchants based on the total amount of IRS fees paid by each member. Finally, the total settlement benefit amount available to class members will not be reduced by class administration costs, the service award, or class counsel's attorney fees and costs. All such items are to be paid separately and independently by Harbortouch as part of the proposed settlement.

In light of the above considerations, the proposed Settlement as a whole falls within the range of what is fundamentally fair, reasonable, adequate and in the best interests of the putative class. There is also no reason to doubt the fairness of the proposed settlement for purposes of preliminary approval. Even at the final-approval stage, the proposed settlement need only have a reasonable, rational basis to warrant approval, and particularly if recommended by experienced and competent class counsel. *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001). The Court should, therefore, grant Plaintiff's request for preliminary approval of the proposed Settlement and direct that notice of the proposed Settlement be given to Proposed Class Members.

**3.  The Factors to be Considered on Final Approval Also Support Preliminary Approval of the Proposed Settlement**

The Eighth Circuit has established four factors to consider when determining whether a proposed settlement is "fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F 3d 922, 932 (8th Cir. 2005); *see also*

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988). In this case, the consideration of all factors weighs heavily in favor of granting approval of the proposed settlement.

First, "the most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Wireless*, 396 F.3d at 933 (citation omitted). Here, Plaintiff alleged that Harbortouch breached the contracts with its merchants and was unjustly enriched by assessing and collecting the IRS Fees from its merchants. Plaintiff further believes that, based on the evidence and applicable law, he had a strong case on liability. At the same time, Plaintiff also recognized that establishing liability at trial was by no means guaranteed and that certain defenses by Harbortouch – as to both certification and merits – could serve to defeat Plaintiff's claims in their entirety. Harbortouch adamantly denies any wrongdoing. As it did in its various motions, Harbortouch was prepared to persuasively argue at trial, among other defenses, that it did not breach the terms of its contracts with its merchants, that certain claims of the merchants were barred (i.e., untimely) due to a contractual limitation period, and that Plaintiff could not prove that the terms at issue, even if breached, were material as to the Plaintiff, thereby entitling Plaintiff to damages. Notwithstanding the defenses to his claims, Plaintiff still managed to negotiate a settlement that, in terms of value, is worth roughly half of the class members' total recoverable damages at trial.

Second, the proposed settlement is a reasonable recovery in light of the fact that Harbortouch is not covered by any insurance policy for the claims made in Plaintiff's First Amended Complaint. *Spencer v. Comserv Corp.*, No. 4-84-794, 1986 U.S. Dist. LEXIS 15863, at *24 (D. Minn. Dec. 30, 1986) (Rosenbaum, J.) ("the ability to ultimately collect a favorable recovery from a defendant is an important factor in determining the adequacy of a proposed

settlement"). Harbortouch, itself, is financing all aspects of the Settlement. Moreover, as further reflected in the Settlement, the terms of the proposed settlement provide for payment of class counsel's attorney fees and costs over a several month period on final approval of the settlement, in order to allow Harbortouch additional time to satisfy its settlement obligations.

Third, barring this Settlement, this case would require the expenditure of substantial additional time and money, "'all the while class members would receive nothing.'" *Wireless*, 396 F.3d at 933 (citation omitted). If not for the proposed Settlement, this case would have continued to a contested class certification motion, a likely appeal of the certification order, and depending on the outcome of the appeal, an eventual trial. And even if Plaintiff did prevail at a trial on the merits, Harbortouch would undoubtedly appeal, causing only further delay and the risk of reversal. Given the nature of alleged claims and terms of representation by class counsel, any recovery at trial would most likely be reduced by the considerable expenses to be incurred by class counsel through trial and all appeals. Conversely, the proposed Settlement confers a substantial and immediate benefit on the class, without the attendant risk of a wholly speculative payment of a potentially larger amount several years from now, and without further reduction for necessary, case-related expenses.

Fourth, there is no reason to believe that there will be any significant or reasonable opposition to the proposed Settlement in light of the proposed terms. Plaintiff will certainly address any objections or concerns raised by class members in connection with final approval. Thus, all of the relevant factors to be considered in connection with final approval of the Settlement unquestionably support the preliminary approval sought here.

**C.      The Court Should Certify the Class For Settlement Purposes Only.**

In preliminarily approving a proposed settlement, this Court must consider whether to conditionally certify a settlement class. *See Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258–59 (8th Cir.1994). Under the Federal Rules of Civil Procedure, "one or more members of a class may sue or be sued as representative parties on behalf of all members if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

If the requirements of numerosity, commonality, typicality, and adequacy are satisfied, a plaintiff must satisfy one of the three subsections of Rule 23(b). *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1119 (8th Cir.2005). In addition to the Rule 23(a) and (b) requirements, "[a]n order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed.R.Civ.P. 23(c)(1)(B). Finally, Rule 23 also provides that the court must direct appropriate notice to the class members. Fed.R.Civ.P. 23(c)(2).

Plaintiff addresses all of the requirements of Rule 23 below.

## 1.  Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1).  A number of factors are relevant to the numerosity requirement of Rule 23(a), "the most obvious of which is, of course, the number of persons in the proposed class." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir.1982); *Compare Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 609 (8th Cir.1983) (noting that seven to fourteen class members is not enough) with *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1323 (8th Cir.1991) (finding that 1,685 potential plaintiffs was a sufficiently large number);  *See also Caroline C. v. Johnson*, 174 F.R.D. 452, 456 (D. Neb. 1996) (citing Newberg on Class Actions § 3.05)("as few as 40 class members should raise a presumption that joinder is impracticable.")

In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Paxton*, 688 F.2d at 559–60; Tate, 723 F.2d at 609 (it is appropriate for the district court to consider "that trying the individual suits would not be inconvenient because it could examine the factual basis of" each class member's complaint).

Here, the class members are so numerous that separate joinder of each member is impracticable. The proposed class consists of a total of approximately 21,658 separate merchant accounts that signed up to use Harbortouch credit card processing services prior to February 1, 2009 and were assessed and paid the IRS Fees.  All such merchants were assessed the IRS Fees pursuant to substantially similar contracts with Harbortouch.  Moreover, in the event that the thousands of individual class members were required to prosecute their claims separately, it is highly likely that a limited number of putative class members would go forward with litigation to

obtain relief in a timely manner and in light of the amount at issue.  As for the amount, the IRS

fees at issue – a $27.95 fee assessed three months per year on each merchant account – were

ultimately assessed a total of four (4) times before Harbortouch discontinued charging the IRS

fees.  Thus, the numerosity requirement is met.

2.      **Commonality**

The commonality element of Rule 23(a)(2) requires that "questions of law or fact are

common to the class." *In re Acceptance Ins. Cos. Secs. Litig.*, 2001 U.S. Dist. LEXIS 25829 at

*8-9 (D. Neb. Aug. 6, 2001).  The test or standard for meeting Rule 23(a)(2) prerequisite is

qualitative rather than quantitative; that is, there need be only a single issue common to all

members of the class. Therefore, this requirement is easily met in most cases. Newberg on Class

Actions § 3.10 (4th).

The commonality requirement is satisfied if the claims of the class "depend upon a

common contention" whose "truth or falsity will resolve an issue that is central to the validity" of

each class member's claims. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551, 180 L. Ed.

2d 374 (2011). Commonality is not required on every question raised in a class action. *DeBoer v.*

*Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir.1995); *Paxton v. Union Nat'l Bank*, 688 F.2d

552, 561 (8th Cir. 1981) ("the rule does not require that all questions of law and fact raised by

the dispute be common.") (citations omitted).  Rather, "Rule 23 is satisfied when the legal

question 'linking the class members is substantially related to the resolution of the litigation.'"

*DeBoer* (quoting *Paxton,* 688 F.2d at 561).

In this case, the key questions of law and fact common to each class member include:  (1)

whether Harbortouch was permitted to collect the IRS fees pursuant to substantially similar

express contract terms that exist in the contracts between Harbortouch on one hand, Plaintiff and

the other class members, on the other; and (2) whether the IRS fees exceeded Harbortouch's costs of compliance with the IRS regulation at issue only, which was the purported reason for the charges as outlined in the same notice provided to all class members. Thus, the commonality element is easily satisfied.

## 3.  Typicality

Rule 23(a)(3) requires that the representative's claim be typical of those of the members of the class. A representative's claim is typical if each class member's claim arose from the same course of conduct and is based on the same legal theories. However, "typical" does not mean identical. *DeBoer,* 64 F.3d at 1174. The heart of this requirement is that the representative party and each member of the class have an interest in prevailing on similar legal claims. Assuming such an interest, "factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United*, 84 F.3d 1525, 1540 (8th Cir. 1996). Typicality under Rule 23(a)(3) means "that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Id.* at 1540 (8th Cir.1996) (quoting *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir.1977). The burden is fairly easily met so long as other class members have claims similar to the named plaintiff. *Id.* (noting that factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory).

In the case at bar, the claims of Plaintiff are typical of those of the class members. Plaintiff and the class members entered into substantially similar contracts with Harbortouch, were provided with the same notice that the IRS fees were being assessed, paid IRS fees, and are

all equally affected by Harbortouch's decision to assess and collect the IRS fees. Plaintiff and class members have the same interest in recovering the IRS Fees pursuant to the same legal theories. Therefore, the typicality requirement is met.

**4.      Adequacy**

Rule 23(a)(4) requires that the representative party fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first, the moving party must show that the interests of the representative party will not conflict with the interests of class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation. *Acceptance*, 2001 U.S. Dist. LEXIS 25829 at *10-11; *Paxton*, 688 F.2d at 562–63; *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir.2000). Pursuant to Federal Rule of Civil Procedure 23(g), the determination of the adequacy of the class representative is considered separately from the adequacy of class counsel. Both prongs of the adequacy requirement are satisfied here.

**i.      Adequacy of the Proposed Class Representatives**

The class representative has no interests that are antagonistic to the class members. Here, the class representative (who also happens to be an attorney) has and will continue to fairly adequately protect and represent the interests of the class. Plaintiff is a responsible individual interested in the fair and equitable adjudication of all class claims. Plaintiff has fully and faithfully participated in this litigation from its inception and has done so by, among other actions, providing responses to written discovery, and participating in a deposition, the mediation and settlement negotiations. Plaintiff has personal knowledge about the facts and circumstances surrounding this controversy, and Plaintiff has no interests which conflict with those of the class members. Finally, Plaintiff has a substantially similar contract with Harbortouch as all of the

other class members and is seeking, on his own and on behalf of all class members, to recover the IRS fees collected by Harbortouch. Thus, the proposed class representative's interests are congruent with and not antagonistic to the proposed class members' interests.

### ii. Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of class counsel. To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g).

Plaintiff's counsel, Joel Ewusiak, Chris Roberts, Scott E. Schutzman, and Gary Pearson, have done extensive investigative and legal work in order to allow this case to reach a point of settlement. Moreover, Mssrs. Ewusiak, Roberts and Schutzman are experienced in class action litigation, having participated in numerous class actions throughout the country, including class action litigation in the state of California, Florida, Illinois, and New York. Messrs. Ewusiak, Roberts and Schutzman have all been previously approved as adequate counsel by other district courts in class action cases. Class counsel's knowledge of the applicable law is also reflected in the numerous pleadings, motions and briefs filed in the court docket. Finally, Plaintiff's counsel possesses the requisite financial resources to maintain this litigation on behalf of Plaintiff and class members. Therefore, class counsel will adequately represent the interests of the class.

### 5. Rule 23 (b) - Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication

If the requirements of numerosity, commonality, typicality, and adequacy are satisfied, a plaintiff must also satisfy one of the three subsections of Rule 23(b). *In re St. Jude Medical, Inc.,*

425 F.3d 1116, 1119 (8th Cir.2005). Here, the predominance and superiority criteria of Rule 23(b)(3) are satisfied. To certify a class under Rule 23(b)(3), the Court must find that: the questions of law or fact common to the members of the class *predominate* over any question affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### i.    Predominance

It is well established that in determining whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability. Indeed, "[w]here, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied." *Hammer v. JP's Southwestern Foods, L.L.C.*, 267 F.R.D. 284, 289 (W.D. Mo. 2010) (citing *Similow v. S.W. Bell Mobile Sys. Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)). When common questions represent a significant aspect of a case and they can be resolved in a single action, class action status is appropriate. *See* 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, § 1788 at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Similow*, 323 F.3d at 39.

In the case at bar, the existence of common questions and their predominance over individual issues for settlement purposes are exemplified by the fact that if every class member were to bring an individual action, each class member would be required to demonstrate the same breach of contract or unjust enrichment theory in order to prove liability. As outlined above, the questions of law and fact that are common to the claims of the representative party and the claims of each member of the class include: (1) whether Harbortouch was permitted to collect the IRS fees at issue pursuant to substantially similar express contract terms that exist in

the contracts between Harbortouch, on one hand, Plaintiff and the other class members, on the other; and (2) whether the charges at issue exceeded Harbortouch's costs of compliance with the IRS regulation at issue only, which was the purported reason for the charges as outlined in the same notice provided to all class members. These common issues predominate on the issue of liability, and there are no questions of law or fact that would affect only individual members of the class. Again, the class members were all charged IRS fees pursuant to substantially similar contracts and for the same reason.

    **ii.**    **Superiority**

Factors relevant to a finding of superiority include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). In terms of fairness and efficiency, the Court should balance the merits of certifying a class against other possible methods of adjudication. Absent a class action, the Court would be faced with the task of potentially litigating numerous lawsuits. *See also Acceptance,* 2001 U.S. Dist. LEXIS 25829 at *11-12 ("…a class action is superior to the other available methods for the fair and efficient adjudication of the controversy …there is little economic incentive for each individual shareholder who purchased at an allegedly inflated price to pursue an action against these defendants.").

Here, all of the class members are merchants for whom prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative, particularly in light of the recoverable damages available to each merchant account – generally, $85 or less.

Moreover, merchants with different contracts have already resolved their claims relating to the IRS fees in the context of another class action case, namely, the *Roma Pizzeria* class action. It is also desirable to concentrate the litigation in this forum where this case is instituted since the IRS fees were assessed on merchants nationwide and all merchants in the settlement class agreed in their contracts with Harbortouch to resolve the dispute in Nebraska. Finally, Plaintiff submits that there are no difficulties to be encountered in the management of the claims on behalf of a class given the questions of law and fact that are clearly common to all the members of the class. Therefore, because a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3), the Court should conditionally certify the class for settlement purposes only.

**6.      Definition of the Class and the Class Claims, and Appointment of Class Counsel**

In addition to the Rule 23(a) and (b) requirements, "[a]n order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed.R.Civ.P. 23(c)(1)(B).  The settlement class, as defined above and in the Settlement, is:  all Persons within the United States that are or were Harbortouch Merchants that submitted a Merchant Application to Harbortouch prior to February 1, 2009, and that paid Harbortouch the IRS fees (and did not receive a full refund).  As further outlined above, all of the class claims stem from the assessment of the IRS fees.  Plaintiff has asserted class claims against Harbortouch for breach of contract, unjust enrichment and declaratory relief.

Plaintiff's counsel should be appointed as class counsel pursuant to Rule 23(g) for the reasons set forth in the "Adequacy" section of this motion, which details the experience of Plaintiff's counsel in handling class actions.  Additionally, Plaintiff's counsel submit that they have done considerable work to date in identifying and investigating the class in this action, as

evidenced by, among other things, the court filings submitted to date. Counsel also has experience in complex litigation, as well as knowledge of the facts and law applicable to this dispute and the types of claims asserted.

## V. THE PROPOSED NOTICE AND CLAIM FORM ARE ADEQUATE

Under Federal Rule of Civil Procedure 23(e)(l), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (i.e., the proposed settlement). Here, as outlined in detail in the Settlement, the parties propose to mail, by first class mail, individual copies of the Notice to Class Members (the "**Notice**")[7] and after final approval, the Settlement Claim Form (the "**Claim Form**")[8] to all proposed class members who can be identified with reasonable effort. Finally, a summary notice will be published in *The Wall Street Journal and Small Business Opportunities*.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the Notice satisfies the requirements of Rule 23(h)(1), as it notifies proposed class members that counsel for Plaintiff will apply to the Court for attorneys' fees and expenses, to be paid by Harbortouch separately and independently of the total settlement benefits available to the class members. As outlined herein and in the Notice, the class representative will apply for a service award of $5,000 and class counsel will apply for an award of attorneys' fees and advanced litigation costs in the total amount of $215,000, all to be paid by Harbortouch. The class administration costs will also be paid separately by Harbortouch.

Furthermore, the Notice includes all other pertinent information necessary to advise the class members of the proposed terms of the settlement. The Notice sets forth the settlement

---

[7] *See* Evidence Index Exhibit 2.
[8] *See* Evidence Index Exhibit 4.

benefits available to the class members; states how the benefits are to be calculated and the methods of compensation; states the parties' disagreement over liability and damages; and sets out the amount of attorneys' fees and expenses that class counsel intend to seek in connection with final settlement approval. In addition, it also explains the nature, history and status of the litigation; sets forth the definition of the proposed class; states the proposed class' claims and issues; discusses the rights of persons who fall within the definition of the proposed class; and summarizes the reasons the parties are proposing the settlement.

Furthermore, the Notice includes detailed information on the process for requesting exclusion from the proposed class. Specifically, it provides the name and mailing address for the claims administrator. For those class members who wish to participate in the settlement, the Notice provides instructions on the process for completing and submitting the Claim Form, upon final approval of the settlement. The Claim Form is also easy to read and understand, consistent with the terms of the Notice and the Settlement, and provides class members with the ability to make a claim for compensation. The Notice also informs class members that copies of the Notice and Claim Forms may be obtained by writing or calling the Claims Administrator. Finally, the Notice discloses the date, time and place of the final approval hearing, along with the procedures for commenting on the proposed settlement, and includes the postal address for the Court, and the postal addresses and telephone numbers for class counsel and counsel for the Harbortouch.

In summary, the contents of the Notice and Claim Form more than satisfy all applicable requirements of the Federal Rules of Civil Procedure. Accordingly, in granting preliminary approval of the proposed Settlement, Plaintiff respectfully requests that the Court also approve the proposed form and method of giving notice to the class members.

## VI. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the settlement, Plaintiff requests that the Court set a final approval hearing date, deadlines for mailing the Notice and deadlines for requesting exclusion, objecting to the settlement and filing papers in support of the settlement. Plaintiff requests the Court establish the following schedule:

| Event | Deadline for Compliance |
|---|---|
| Date for Final Settlement Hearing | One-hundred thirty five (135) or more days from entry of the Preliminary Approval Order. (Preliminary Approval Order ¶ 20.) |
| Deadline for Mailing of Notice | Seventy-Five (75) days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 9.) |
| Deadline to file Requests for Exclusion | Forty five (45) days after Mailing of Notice (Preliminary Approval Order ¶ 14) |
| Deadline for filing Objections to Settlement | Forty five (45) days after Mailing of Notice (Preliminary Approval Order ¶ 15). |
| Deadline for Plaintiff to file Motion for Final Approval of Settlement and Class Certification, and for Class Counsel to file Motion for Service Award, Attorneys' fees and Expenses. | Thirty (30) days prior to the Final Settlement Hearing. (Preliminary Approval Order ¶ 23-24.) |

## VII. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court to enter the proposed Preliminary Approval Order substantially in the form submitted.

Date: July 22, 2015.

| EWUSIAK LAW, P.A. | LAW OFFICES OF SCOTT E. SCHUTZMAN |
|---|---|
| /s/ Joel Ewusiak<br>Joel Ewusiak<br>Fla. Bar No.: 0509361<br>100 Main Street, Suite 205<br>Safety Harbor, Florida 34695<br>P: 727.286.3559<br>F: 727.286.3219<br>E: joel@ewusiaklaw.com | /s/ Scott E. Schutzman<br>Scott E. Schutzman<br>Ca. Bar No.: 140962<br>schutzy@msn.com<br>3700 So. Susan St., Suite 120<br>Santa Ana, CA 92704<br>Phone: 714.543.3638<br>Fax:   714.245.2449 |
| CHRIS ROBERTS LAW FIRM, P.A. | PEARSON LAW OFFICES |
| /s/ Christopher J. Roberts<br>Christopher J. Roberts<br>Fla. Bar No.: 0150525<br>303 Main Street, #654<br>Safety Harbor, Florida 34695<br>P: 727.286.3541<br>F: 727.269.5288<br>E: chris@chrisrobertsfirm.com | /s/ Gary R. Pearson<br>Gary R. Pearson<br>Nebraska Bar No.: 15136<br>pearsonlaw@neb.rr.com<br>221 South 66th Street<br>Lincoln, NE 68510<br>Phone: 402.483.4197<br>Fax:   402.483.4312 |

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **July 22, 2015**, I served the foregoing document via e-mail

to all counsel of record, namely:

**J. Scott Paul**
**Michaela A. Smith**
McGrath North Mullin & Kratz, PC LLO1601 Dodge Street
Suite 3700, First National Tower
Omaha, NE 68102-1627
*Counsel for Defendant Harbortouch Payments, LLC*
*(formerly United Bank Card, Inc. d/b/a Harbortouch)*


**/s/ Joel Ewusiak**
Joel Ewusiak