IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMADOR L. CORONA, ATTORNEY | ) | Case No. No. 8:12-cv-00089 |
| AT LAW, individually and on behalf | ) | |
| of all other similarly situated persons, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED BANK CARD, INC. and | ) | |
| FIRST NATIONAL BANK OF OMAHA, | ) | |
| a nationally chartered bank, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
FOR FINAL CERTIFICATION OF SETTLEMENT CLASS**

Plaintiff, AMADOR L. CORONA, ATTORNEY AT LAW, individually and on behalf of all other similarly situated persons ("**Plaintiff**" or **"Corona"**), pursuant to Fed. R. Civ. P. 23 and applicable law, hereby submits this Memorandum Brief in support of his request to finally approve the proposed class action settlement, and to finally certify the proposed settlement class for settlement purposes only.

## I.      SUMMARY OF NOTICE, OPT-OUTS, AND OBJECTIONS TO DATE

On July 21, 2015, Plaintiff and Defendant, Harbortouch Payments, LLC (formerly United Bank Card, Inc. d/b/a Harbortouch) ("Harbortouch"), entered into a formal Settlement Agreement ("the **Settlement**") in order to resolve this dispute. (Doc. # 192-1). On August 26, 2015, the Court entered its Order (Doc. # 196) granting Plaintiff's *Motion to Preliminarily Approve the Class Action Settlement and Preliminarily Certify the Settlement Class* (Doc. # 190) ("**Motion for Preliminary Approval**"). In its Order (hereinafter "the **Preliminary Approval Order**"), the Court approved the form and manner of notice to the Class Members

("the **Notice**"), the claim form, and otherwise set forth the procedure and schedule for final approval of the settlement, including deadlines for opt-outs and objections. The Court scheduled the fairness hearing for Monday, February 1, 2016 at 3:00pm, CST.

The Notice was timely and appropriately mailed to the Class Members by the court-approved settlement administrator, Angeion Group ("**AG**"). *See* Affidavit of Troy Walitsky ("**Walitsky Aff.**"), attached as "**Exhibit 1**" to Plaintiff's Evidence Index ("the **Index**"), filed contemporaneously herewith. The Notice advised Class Members of the lawsuit and their legal rights and options as members of the Class, including the right to exclude themselves (i.e., "opt out") from the Class, to make a claim, or to file an objection. *Id.* ¶¶ 13-14; *See* Notice attached as "Exhibit A" to Walitsky Aff. In addition, AG caused a Summary Notice to be published in the *Wall Street Journal* and *Small Business Opportunities*. *Id.* ¶ 12; *See* Summary Notice attached as "Exhibit B" to Walitsky Aff.

Beginning on or about October 13, 2015, AG established and continues to maintain a toll-free telephone number and interactive voice response system to accommodate inquiries from Class Members and to respond to frequently asked questions. *Id.* ¶ 10. The Notice provides the toll-free number and AG's physical address, and the toll-free number provides AG's email address and physical address in order to receive communications from Class Members concerning the proposed settlement and to provide Class Members with information, including the Notice and relevant court documents upon request. *Id.* ¶ 11.

The deadline for Class Members to opt-out of the Class is December 24, 2015. To date, no Class Members have submitted requests for exclusion from the proposed settlement. *See* Affidavit of Joel Ewusiak ("**Ewusiak Aff.**") ¶10, attached as "**Exhibit 4**" to Index.

The deadline for objections to the proposed settlement is December 24, 2015. No objections[1] have been raised by Class Members to date. Ewusiak Aff. ¶ 11. To the extent any objections are timely and appropriately filed, the parties will respond to them by January 22, 2015 (i.e., ten days before the February 1, 2016 fairness hearing), the deadline established by the Court for doing so in the Preliminary Approval Order.

To date, all of the inquiries received by Class Counsel from class members have pertained to how to file a claim for the settlement benefits upon final approval of the settlement. *Id*. at ¶ 9. In any event, in light of the fact that no Class Members opted out of the settlement or objected to it, thus far,[2] and that all inquiring Class Members to date have expressed interest in filing a claim for the settlement benefits, the reaction of the Class Members to the proposed settlement has been positive.

In support of his Motion, Plaintiff hereby reaffirms, incorporates by reference and supplements the arguments previously raised in the Memorandum Brief in Support of the Motion for Preliminary Approval (Doc. # 191). The Brief sets forth a detailed "Summary of the Litigation" and "Summary of the Proposed Settlement." Plaintiff requests the Court enter the Final Judgment Order Approving the Class Action Settlement and Judgment attached to the Index filed in Support of this Motion as "**Exhibit 2**," which finally approves the proposed settlement, finally certifies the settlement class, and finally approves counsel for Plaintiff as counsel for the settlement class.

---

[1] On November 17, 2015, the Court docketed a document titled "OBJECTION by Charlene M. Parra as to defendant United Bank Card, Inc. a corporation doing business as Harbortouch." (Doc. No. 198). The document does not appear to be an objection to the proposed settlement, but rather, an attempt by an individual to request settlement benefits. Ewusiak Aff. ¶ 12.

[2] See footnote one herein.

## II. COMPLIANCE WITH THE CLASS ACTION FAIRNESS ACT OF 2005

In compliance with the Class Action Fairness Act of 2005, codified as 28 U.S.C. § 1715, counsel for Harbortouch served written notice of the proposed settlement on the United States Attorney General and the Attorneys General of the states in which the Settlement Class members reside within 10 days after Plaintiff's Motion for Preliminary Approval of Class Action Settlement and for Conditional Certification of Class Settlement was filed. *See* Affidavit of J. Scott Paul ("**Paul Aff.**"), attached as "**Exhibit 3**" to the Index.

## III. ARGUMENT

### A. Legal Standards for Final Approval of Class Action Settlement

Settlement is a strongly favored method for resolving litigation. *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No.1*, 921 F.2d 1371, 1383 (8th Cir. 1990). In class action lawsuits, the policy of favoring voluntary resolution of litigation through settlement is particularly strong, as there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Armstrong v. Ed. of Sch. Dirs.*, 616 F.2d 305,313 (7th Cir. 1980) (internal citations omitted); *see also White v. NFL*, 822 F. Supp. 1389, 1416 (D. Minn. 1993).

Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of claims brought on a class basis. Federal Rule of Civil Procedure 23(e) provides that "the district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005); *Desert Orchid Partners, L.L.C. v. Transaction Systems Architects, Inc.*, 2007 WL 703515, at *1 (D. Neb. Mar. 2, 2007). In deciding whether to approve a proposed settlement, the Eighth Circuit indicates that

a "'strong public policy favors [such] agreements, and courts should approach them with a presumption in their favor.'" *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (quoting *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990)); *Justine Realty Co. v. Am. Nat'l Can Co.*, 976 F.2d 385, 391 (8th Cir. 1992).

A proposed class settlement that has been reached after an arm's-length negotiation by capable counsel is presumptively fair. *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1178 (8th Cir. 1995). Consequently, in making its assessment pursuant to Rule 23(e), the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Wireless*, 396 F.3d at 934; *Petrovic*, 200 F.3d at 1148; *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

Plaintiff submits that the Settlement is fundamentally fair, reasonable and adequate and in the best interests of the Settlement Class, under all the circumstances, and that the Court should finally approve the settlement and finally certify the class. Moreover, as explained in the Brief in Support of the Motion for Preliminary Approval (Doc. # 191) and again below, the Settlement was reached after extensive investigation and litigation by experienced counsel on both sides, and then only after protracted arm's-length negotiations. Under these circumstances, the Settlement should be afforded the presumption of fairness.

**B.      The Settlement is Fair, Reasonable and Adequate**

The Eighth Circuit has established four factors to consider when determining whether a proposed settlement is "fair, reasonable, and adequate: (1) the merits of the plaintiff's case,

weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F 3d 922, 932 (8th Cir. 2005); *see also Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988).

The Court is "entitled to rely on the judgment of experienced counsel when evaluating the merits of a proposed class action settlement." *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1420 (D. Minn. 1987); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) (the recommendation of experienced counsel is entitled to great weight). And "a presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *See* Manual for Complex Litigation §30.42 (3d ed. 1995).

In this case, the consideration of all factors weighs heavily in favor of granting final approval of the proposed settlement.

## 1. The Strength of Plaintiff's Case Weighed Against the Amount of the Settlement

First, "the most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Wireless*, 396 F.3d at 933 (citation omitted). In reaching this determination, courts balance the continuing risks of litigation against the immediate and certain benefits afforded to class members in a recovery. *See Grunin*, 513 F.2d at 124; *Welsch v. Gardebring*, 667 F. Supp. 1284, 1290 (D. Minn. 1987).

Here, Plaintiff alleged that Harbortouch breached the contracts with its merchants and was unjustly enriched by assessing and collecting certain fees, namely, "IRS Processing Validation Charges" ("**IRS fees**"), from its merchants. Plaintiff believes that, based on the

evidence and applicable law, he had a strong case on liability. At the same time, Plaintiff also recognizes that establishing liability at trial was by no means guaranteed and that certain defenses by Harbortouch – as to both certification and merits – could serve to defeat Plaintiff's claims in their entirety. Harbortouch adamantly denies any wrongdoing. As it did in its various motions, Harbortouch was prepared to persuasively argue at trial, among other defenses, that it did not breach the terms of its contracts with its merchants, that certain claims of the merchants were barred (i.e., untimely) due to a contractual limitation period, and that Plaintiff could not prove that the contract terms at issue, even if breached, were material as to Plaintiff and the class members, thereby entitling them to damages.

Notwithstanding the defenses to his claims, Plaintiff still managed to negotiate a settlement that, in terms of value, consists of roughly half of the class members' total recoverable damages at trial. In addition, the plan for distributing the settlement benefits was devised in a manner to compensate former and current merchants based on the total amount of IRS fees paid by each member. Moreover, the total settlement benefit amount available to class members will not be reduced by class administration costs, the service award, or class counsel's attorney fees and costs. All such items are to be paid separately and independently by Harbortouch as part of the proposed settlement. Finally, the settlement also serves as an immediate recovery and avoids the numerous obstacles and risks that must be overcome to achieve such a recovery through litigation and at trial, and its attendant delays. Plaintiff submits that the settlement amount is a very good recovery.

## 2.   The Defendant's Financial Condition

Second, "the ability to ultimately collect a favorable recovery from a defendant is an important factor in determining the adequacy of a proposed settlement." *Spencer v. Comserv*

*Corp.*, No. 4-84-794, 1986 U.S. Dist. LEXIS 15863, at *24 (D. Minn. Dec. 30, 1986) In this case, the proposed settlement is a reasonable recovery in light of the fact that Harbortouch is not covered by any insurance policy for the claims made in Plaintiff's First Amended Complaint. Harbortouch, itself, is financing all aspects of the Settlement. Moreover, as further reflected in the Settlement, the terms of the proposed settlement provide for payment of Class Counsel's attorney fees and costs over a several month period on final approval of the settlement, in order to allow Harbortouch additional time to satisfy its settlement obligations.

3.      **The Complexity and Expense of Further Litigation**

Courts have held that the complexity, expense and duration of the litigation should be considered in assessing the fairness, reasonableness and adequacy of a settlement. *Pfizer Inc. v. Lord*, 456 F.2d 532, 543 (8th Cir. 1972). Therefore, the present Settlement must be weighed against the delay and expense of pursuing a more favorable result at trial. *Grunin*, 513 F.2d at 124.

Settlements are encouraged "to avoid the uncertainties of the outcome of litigation as well as the avoidance of wasteful litigation and expense incident thereto." *Pfizer*, 456 F.2d at 543.   In the absence of this Settlement, the expense and duration of this litigation would increase, "'all the while class members would receive nothing.'" *Wireless*, 396 F.3d at 933 (citation omitted). Even if an adjudication on the merits is in favor of plaintiffs, defendant would likely appeal. *See, e.g., National Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (if a class action obtains a successful judgment, an appeal is likely to follow). As a result, the risk of plaintiffs ultimately not prevailing would remain high and the case would be prolonged. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) (delay from appeals is a factor to be considered), *aff'd*, 798 F.2d 35 (2nd Cir. 1986).

If not for the proposed Settlement, this case would require the expenditure of substantial additional time and money, and would have continued to a contested class certification motion, a likely appeal of the certification order, and depending on the outcome of the appeal, an eventual trial. And even if Plaintiff did prevail at a trial on the merits, Harbortouch would undoubtedly appeal, causing only further delay and the risk of reversal. Given the nature of alleged claims and terms of representation by Class Counsel, any recovery at trial would most likely be reduced by the considerable expenses to be incurred by Class Counsel through trial and all appeals. Conversely, the proposed Settlement confers a substantial and immediate benefit on the class, without the attendant risk of a wholly speculative payment of a potentially larger amount several years from now, and without further reduction for necessary, case-related expenses. Thus, this factor weighs heavily in favor of this Court's final approval of the settlement.

**4. The Amount of Opposition to the Settlement**

Pursuant to the Court's Preliminary Approval Order, summary notice was published and thousands of notices were sent to the class members. Walitsky Aff. ¶¶ 4-9; 12.

The deadline to object is December 24, 2015. To date, Plaintiff has received no objections[3] from class members. Ewusiak Aff. ¶ 11. To the extent any objections are filed, the parties will address them by the court-ordered deadline of January 21, 2016.

Additionally, the deadline to request exclusion from the class is December 24, 2015. To date, Plaintiff has received no opt-outs from class members. Ewusiak Aff. ¶ 10.

---

[3] As outlined above in footnote one, on November 17, 2015, the Court docketed the following document "OBJECTION by Charlene M. Parra as to defendant United Bank Card, Inc. a corporation doing business as Harbortouch." (Doc. No. 198). The document does not appear to be an objection to the proposed settlement, but rather, an attempt by an individual to request settlement benefits. Ewusiak Aff. ¶ 12.

As set forth above, all of the inquiries received by Class Counsel from class members, to date, have pertained to how to file a claim for the settlement benefits upon final approval of the settlement. Ewusiak Aff. ¶ 9.

In light of the fact that no Class Members opted out of the settlement or objected to it, thus far, and that all inquiring Class Members to date have an expressed in interest in filing a claim for the settlement benefits, the reaction of the Class Members to the proposed settlement has been positive.

Plaintiff will address any objections or concerns raised by class members after the filing of this Motion ten days prior to the final approval hearing. Nevertheless, given that the Settlement has thus far been overwhelmingly approved by the vast majority of the Class, this factor supports final approval. *See Petrovic,* 200 F.3d at 1152 (approving settlement where "fewer than 4 percent of the class members objected to the settlement"); *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (district court did not err in approving a settlement where there was a handful of objectors and one opt-out in a 5,400 member class); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3rd Cir. 1990) (Twenty-nine objections out of 281 class members "strongly favors settlement").

5.      **Proposed Settlement Is the Product of Informed, Arm's-Length Negotiations Among Experienced Counsel After Extensive Motion Practice and Discovery**

Finally, "'a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Blackman v. Dist. of Columbia*, 454 F. Supp. 2d 1, 8 (D.D.C. 2006) (citations omitted); *see, e.g., Desert Orchid Partners, L.L. C. v. Transaction Sys. Architects*, *Inc.*, No. 8:02CV553, 2007 U.S. Dist. LEXIS 15547, at *6-*7 (D. Neb. Mar. 2, 2007); *In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056, 1064 (D.S.D. 2004). The Proposed Settlement is the product of

extensive litigation and arm's-length negotiations conducted by experienced counsel. Accordingly, the fundamental fairness, adequacy and reasonableness of the Proposed Settlement may be presumed.

This lawsuit was filed on February 2, 2012. Over three years of litigation preceded the settlement, which included the comprehensive investigation, research and preparation of the claims by Class Counsel. Moreover, the litigation activity has been substantial, including the drafting of the complaints, and extensive motion practice, including motions to dismiss, motions for summary judgment, and other motions directed to the pleadings. The parties also engaged in extensive written and oral discovery on both merits and class certification issues. The court docket speaks for itself. (Doc. # 1 to # 196).

In September 2014, the parties attempted to mediate a settlement. The parties submitted comprehensive mediation statements. All counsel of record and representatives for all parties attended the mediation. During the mediation, the parties set forth detailed and thoughtful presentations on the perceived strengths and weakness of their respective cases. Although the mediation resulted in an impasse and discovery on class certification and additional motion practice followed, the parties eventually engaged in further settlement discussions in early March 2015. Over the course of a three month period, the parties labored through the process of negotiating the terms of the settlement based on their perceived views of the facts and applicable law, as well as ultimately drafting the Settlement and the supporting documentation. Damage analyses were also prepared and reviewed by each side. There is no doubt that the proposed Settlement in this case was the product of extensive negotiations. *See, e.g., In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 U.S. Dist. LEXIS 21226, at * 18 (D. Minn. June 2,

1993) ("intensive and contentious negotiations likely result in meritorious settlements, rather than collusive ones").

Based on their familiarity with the factual and legal issues, counsel for the parties were able to negotiate the proposed Settlement, taking into account the costs and risks of continued litigation. The negotiations were at all times adversarial and at arm's-length, and produced a result that the parties believe to be in their respective best interests. *See, e.g., In re Charter Commc'ns, Inc. Sec. Litig.*, No. MDL 1506, 2005 U.S. Dist. LEXIS 14772, at *8 (E.D. Mo. June 30, 2005); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194 (S.D.N.Y. 2005). Moreover, "the Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Employee Benefit Plans*, 1993 U.S. Dist. LEXIS 21226, at *17; *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). Counsel for both sides have extensive experience in class action litigation and are thoroughly familiar with the factual and legal issues involved. This case has also been fiercely litigated by experienced and competent counsel on all sides. Because the proposed Settlement is the product of serious, informed and non-collusive negotiations among experienced counsel, it is deserving of final approval. *See DeBoer*, 64 F.3d at 1178.

In summary, all of the relevant factors to be considered in connection with final approval of the Settlement unquestionably support the final approval sought here. The proposed settlement need only have a reasonable, rational basis to warrant approval, and particularly if recommended by experienced and competent class counsel. *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001). Plaintiff and Class Counsel submit that the proposed Settlement as a whole is fundamentally fair, reasonable, adequate and in the best interests of the class.

**C.      The Court Should Finally Certify the Class for Settlement Purposes Only**

In addition to finally approving a proposed settlement, this Court must consider whether to finally certify a settlement class. *See Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258–59 (8th Cir.1994). Under the Federal Rules of Civil Procedure, "one or more members of a class may sue or be sued as representative parties on behalf of all members if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

If the requirements of numerosity, commonality, typicality, and adequacy are satisfied, a plaintiff must satisfy one of the three subsections of Rule 23(b). *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). In addition to the Rule 23(a) and (b) requirements, "[a]n order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed.R.Civ.P. 23(c)(1)(B).

Plaintiff addresses all of the requirements of Rule 23 below.

**1.      Numerosity**

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). A number of factors are relevant to the numerosity requirement of

Rule 23(a), "the most obvious of which is, of course, the number of persons in the proposed class." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982); *Compare Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 609 (8th Cir. 1983) (noting that seven to fourteen class members is not enough) with *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1323 (8th Cir. 1991) (finding that 1,685 potential plaintiffs was a sufficiently large number); *See also Caroline C. v. Johnson*, 174 F.R.D. 452, 456 (D. Neb. 1996) (citing Newberg on Class Actions § 3.05)("as few as 40 class members should raise a presumption that joinder is impracticable.")

In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Paxton*, 688 F.2d at 559–60; *Tate*, 723 F.2d at 609 (it is appropriate for the district court to consider "that trying the individual suits would not be inconvenient because it could examine the factual basis of" each class member's complaint).

Here, the class members are so numerous that separate joinder of each member is impracticable. The proposed class consists of a total of approximately 21,658 separate merchant accounts that signed up to use Harbortouch credit card processing services prior to February 1, 2009 and were assessed and paid the IRS fees. All such merchants were assessed the IRS fees pursuant to substantially similar contracts with Harbortouch. Moreover, in the event that the thousands of individual class members were required to prosecute their claims separately, it is highly likely that a limited number of putative class members would go forward with litigation to obtain relief in a timely manner and in light of the amount at issue. As for the amount, the IRS fees at issue – a $27.95 fee assessed three months per year on each merchant account – were

ultimately assessed a total of four (4) times before Harbortouch discontinued charging the IRS fees. Thus, the numerosity requirement is met.

### 2. Commonality

The commonality element of Rule 23(a)(2) requires that "questions of law or fact are common to the class." *In re Acceptance Ins. Cos. Secs. Litig.*, 2001 U.S. Dist. LEXIS 25829 at *8-9 (D. Neb. Aug. 6, 2001). The test or standard for meeting Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class. Therefore, this requirement is easily met in most cases. Newberg on Class Actions § 3.10 (4th).

The commonality requirement is satisfied if the claims of the class "depend upon a common contention" whose "truth or falsity will resolve an issue that is central to the validity" of each class member's claims. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). Commonality is not required on every question raised in a class action. *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1981) ("the rule does not require that all questions of law and fact raised by the dispute be common.") (citations omitted). Rather, "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *DeBoer* (quoting *Paxton,* 688 F.2d at 561).

In this case, the key questions of law and fact common to each class member include: (1) whether Harbortouch was permitted to collect the IRS fees pursuant to substantially similar contract terms that exist in the contracts between Harbortouch, on one hand, and Plaintiff and the other class members, on the other; and (2) whether the IRS fees exceeded Harbortouch's costs of compliance with the IRS regulation at issue, which was the purported reason for the fees as

outlined in the same fee notice provided by Harbortouch to all class members. Thus, the commonality element is easily satisfied.

### 3.    Typicality

Rule 23(a)(3) requires that the representative's claim be typical of those of the members of the class. A representative's claim is typical if each class member's claim arose from the same course of conduct and is based on the same legal theories. However, "typical" does not mean identical. *DeBoer,* 64 F.3d at 1174. The heart of this requirement is that the representative party and each member of the class have an interest in prevailing on similar legal claims. Assuming such an interest, "factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United*, 84 F.3d 1525, 1540 (8th Cir. 1996). Typicality under Rule 23(a)(3) means "that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Id.* at 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir. 1977). The burden is fairly easily met so long as other class members have claims similar to the named plaintiff. *Id.* (noting that factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory).

In the case at bar, the claims of Plaintiff are typical of those of the class members. Plaintiff and the class members entered into substantially similar contracts with Harbortouch, were provided with the same fee notice that the IRS fees were being assessed, paid IRS fees, and are all equally affected by Harbortouch's decision to assess and collect the IRS fees. Plaintiff

and class members have the same interest in recovering the IRS fees pursuant to the same legal theories.  Therefore, the typicality requirement is met.

### 4.    Adequacy

Rule 23(a)(4) requires that the representative party fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first, the moving party must show that the interests of the representative party will not conflict with the interests of class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation. *Acceptance*, 2001 U.S. Dist. LEXIS 25829 at *10-11; *Paxton*, 688 F.2d at 562–63; *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2nd Cir. 2000).  Pursuant to Federal Rule of Civil Procedure 23(g), the determination of the adequacy of the class representative is considered separately from the adequacy of class counsel.  Both prongs of the adequacy requirement are satisfied here.

### i.    Adequacy of the Proposed Class Representatives

The class representative has no interests that are antagonistic to the class members. Here, the class representative (who also happens to be an attorney) has and will continue to fairly and adequately protect and represent the interests of the class.  Plaintiff is a responsible individual interested in the fair and equitable adjudication of all class claims.  Plaintiff has fully and faithfully participated in this litigation from its inception and has done so by, among other actions, providing responses to written discovery, and participating in a deposition, the mediation and settlement negotiations.  Plaintiff has personal knowledge about the facts and circumstances surrounding this controversy, and Plaintiff has no interests which conflict with those of the class members.   Finally, Plaintiff has a substantially similar contract with Harbortouch as all of the other class members and is seeking, on his own and on behalf of all class members, to recover

the IRS fees collected by Harbortouch. Thus, the proposed class representative's interests are congruent with and not antagonistic to the proposed class members' interests.

### ii. Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of class counsel. To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g).

Plaintiff's counsel, Joel Ewusiak, Chris Roberts, Scott E. Schutzman, and Gary Pearson, have done extensive investigative and legal work in order to allow this case to reach a point of settlement. Moreover, Mssrs. Ewusiak, Roberts and Schutzman are experienced in class action litigation, having participated in numerous class actions throughout the country, including class action litigation in the state of California, Florida, Illinois, and New York. Messrs. Ewusiak, Roberts and Schutzman have all been previously approved as adequate counsel by other district courts in class action cases. Class counsel's knowledge of the applicable law is also reflected in the numerous pleadings, motions and briefs filed in the court docket. Finally, Plaintiff's counsel possesses the requisite financial resources to maintain this litigation on behalf of Plaintiff and class members. Therefore, class counsel will adequately represent the interests of the class.

### 5. Rule 23 (b) - Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication

If the requirements of numerosity, commonality, typicality, and adequacy are satisfied, a plaintiff must also satisfy one of the three subsections of Rule 23(b). *In re St. Jude Medical, Inc.,* 425 F.3d 1116, 1119 (8th Cir. 2005). Here, the predominance and superiority criteria of Rule

23(b)(3) are satisfied. To certify a class under Rule 23(b)(3), the Court must find that: the questions of law or fact common to the members of the class *predominate* over any question affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### i.    Predominance

It is well established that in determining whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability. Indeed, "[w]here, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied." *Hammer v. JP's Southwestern Foods, L.L.C.*, 267 F.R.D. 284, 289 (W.D. Mo. 2010) (citing *Similow v. S.W. Bell Mobile Sys. Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)). When common questions represent a significant aspect of a case and they can be resolved in a single action, class action status is appropriate. *See* 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, § 1788 at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Similow*, 323 F.3d at 39.

In the case at bar, the existence of common questions and their predominance over individual issues for settlement purposes are exemplified by the fact that if every class member were to bring an individual action, each class member would be required to demonstrate the same breach of contract or unjust enrichment theory in order to prove liability. As outlined above, the questions of law and fact that are common to the claims of the representative party and the claims of each member of the class include: (1) whether Harbortouch was permitted to collect the IRS fees at issue pursuant to substantially similar contract terms that exist in the contracts between Harbortouch, on one hand, and Plaintiff and the other class members, on the

other; and (2) whether the charges at issue exceeded Harbortouch's costs of compliance with the IRS regulation at issue, which was the purported reason for the fees as outlined in the same fee notice provided to all class members. These common issues predominate on the issue of liability, and there are no questions of law or fact that would affect only individual members of the class. Again, the class members were all charged IRS fees pursuant to substantially similar contract terms found in substantially similar contracts and for the same reason.

      ii.      **Superiority**

Factors relevant to a finding of superiority include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). In terms of fairness and efficiency, the Court should balance the merits of certifying a class against other possible methods of adjudication. Absent a class action, the Court would be faced with the task of potentially litigating numerous lawsuits. *See Acceptance,* 2001 U.S. Dist. LEXIS 25829 at *11-12 ("…a class action is superior to the other available methods for the fair and efficient adjudication of the controversy …there is little economic incentive for each individual shareholder who purchased at an allegedly inflated price to pursue an action against these defendants.").

Here, all of the class members are merchants for whom prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative, particularly in light of the total recoverable damages possibly available to each merchant account – generally, $85 or less. Moreover, merchants with different contracts have already resolved their claims relating to

the IRS fees in the context of another class action case, namely, the *Roma Pizzeria* class action. It is also desirable to concentrate the litigation in this forum where this case is instituted since the IRS fees were assessed on merchants nationwide and all merchants in the Settlement Class agreed in their contracts with Harbortouch to resolve the dispute in Nebraska. Finally, Plaintiff submits that there are no difficulties to be encountered in the management of the claims on behalf of a class given the questions of law and fact that are clearly common to all the members of the class. Therefore, because a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3), the Court should finally certify the class for settlement purposes only.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court enter the proposed Final Approval Order and Judgment substantially in the form submitted.

Date: December 21, 2015.

| EWUSIAK LAW, P.A. | LAW OFFICES OF SCOTT E. SCHUTZMAN |
|---|---|
| /s/ Joel Ewusiak<br>Joel Ewusiak<br>Fla. Bar No.: 0509361<br>100 Main Street, Suite 205<br>Safety Harbor, Florida 34695<br>P: 727.286.3559<br>F: 727.286.3219<br>E: joel@ewusiaklaw.com | /s/ Scott E. Schutzman<br>Scott E. Schutzman<br>Ca. Bar No.: 140962<br>schutzy@msn.com<br>3700 So. Susan St., Suite 120<br>Santa Ana, CA 92704<br>Phone: 714.543.3638<br>Fax: 714.245.2449 |
| CHRIS ROBERTS LAW FIRM, P.A. | PEARSON LAW OFFICES |
| /s/ Christopher J. Roberts<br>Christopher J. Roberts<br>Fla. Bar No.: 0150525<br>303 Main Street, #654<br>Safety Harbor, Florida 34695<br>P: 727.286.3541<br>F: 727.269.5288<br>E: chris@chrisrobertsfirm.com | /s/ Gary R. Pearson<br>Gary R. Pearson<br>Nebraska Bar No.: 15136<br>pearsonlaw@neb.rr.com<br>221 South 66th Street<br>Lincoln, NE 68510<br>Phone: 402.483.4197<br>Fax: 402.483.4312 |

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **December 21, 2015**, I served the foregoing document via

e-mail to all counsel of record, namely:

**J. Scott Paul**
**Michaela A. Smith**
McGrath North Mullin & Kratz, PC LLO
1601 Dodge Street
Suite 3700, First National Tower
Omaha, NE 68102-1627
*Counsel for Defendant Harbortouch Payments, LLC*
 *(formerly United Bank Card, Inc. d/b/a Harbortouch)*

**/s/ Joel Ewusiak**
Joel Ewusiak
